UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA *ex rel.* TZAC, INC., <br><br> Plaintiff, <br><br> v. <br><br> THE CARTER CENTER, INC., <br><br> Defendant. | Civil Action No. 15-2001 (RC) <br><br> FILED UNDER SEAL |

## UNITED STATES' MOTION TO DISMISS

The United States of America ("United States" or "Government"), by and through its undersigned counsel, respectfully moves the Court to dismiss this action pursuant to 31 U.S.C. § 3730(c)(2)(A) of the False Claims Act ("FCA"). The United States also asks that the Court keep this matter under seal while it considers this Motion. The United States understands that Relator intends to seek a hearing regarding this Motion pursuant to 31 U.S.C. § 3730(c)(2)(A).

## BACKGROUND

Relator TZAC, Inc. (a/k/a The Zionist Advocacy Center) ("Relator") filed the complaint in this action under seal pursuant to the FCA on behalf of the United States against The Carter Center, Inc. (the "Carter Center"). Relator contends that the Carter Center violated the FCA by submitting false certifications in connection with obtaining grants from the U.S. Agency for International Development ("USAID"). Specifically, Relator contends that the Carter Center falsely indicated that it had not provided material support or resources to terrorist persons or entities in the last 10 years.

Relator bases its allegations on media reports and other publicly available materials that document interactions between former United States President Jimmy Carter, the principal of the

Carter Center, and foreign officials in the Middle East between 2006 and 2015. *See generally* Compl. ¶¶ 22-48. Relator contends that certain of these foreign officials were representatives of terrorist organizations Hamas and the Popular Front for the Liberation of Palestine. *See, e.g.,* Compl. ¶¶ 23, 35, 42, 47. Relator contends that in the course of President Carter's interactions, the Carter Center provided material support or resources to terrorists by hosting meetings in conference rooms and facilities (*id.* ¶ 29), offering refreshments (*id.* ¶ 28), and providing a forum for representatives of terrorist organizations to interact. *Id.* ¶ 30. Relator also contends that through these interactions, President Carter provided expert advice (*id.* ¶ 48) and successfully encouraged representatives of terrorist organizations to resolve peacefully their disputes, which obviated the need for those organizations to expend resources on their disputes, instead freeing up resources to conduct terrorism against Israelis. *Id.* ¶ 43.

As set forth on the Carter Center's public website, the Carter Center's mission is to seek "to prevent and resolve conflicts, enhance freedom and democracy, and improve health." *See Our Mission,* Carter Center, https://www.cartercenter.org/about (last visited Nov. 1, 2017). According to the website, the Carter Center has worked publicly for decades to support a viable solution to the Israeli-Palestinian conflict, with a particular focus on the conflict between the Palestinian parties Fatah and Hamas. *See Israel & Palestine*, Carter Center, https://www.cartercenter.org/countries/israel_and_palestine.html (last visited Nov. 1, 2017). The Center believes that "Palestinian national unity is critical to the success of a two-state solution" to the Israeli-Palestinian conflict. *Id.*

As part of this effort, and as identified in Relator's complaint, representatives of the Carter Center have engaged in discussions and meetings with members of Hamas and the Popular Front for the Liberation of Palestine. *Id.* at 2; *Jimmy Carter Trip Report: Moscow & Palestine*, Carter

Center (May 5, 2015), https://www.cartercenter.org/news/trip_reports/moscow-palestine-2015.html (last visited Nov. 1, 2017). In addition, the Carter Center implemented a project "focused on issues of electoral reform and consensus-building across the internal Palestinian divide." *Middle East Conflict Resolution*, Carter Center, https://www.cartercenter.org/peace/conflict_resolution/middle-east/index.html (last visited Nov. 1, 2017); *see also Israel & Palestine*, *supra*. These activities were widely publicized, both in the press and in reports posted on the Carter Center's website. *See Palestinian Elections: Trip Report*, Carter Center (Jan. 29, 2006), https://www.cartercenter.org/news/documents/doc2287.html (last visited Nov. 1, 2017); *Paris, Lebanon, & Syria Trip Report*, Carter Center (Dec. 18, 2008), https://www.cartercenter.org/news/trip_reports/paris_lebanon_syria_2008.html (last visited Nov. 1, 2017); *Trip Report: Lebanon, Syria, Israel, West Bank, & Gaza ("Middle East")*, Carter Center, https://www.cartercenter.org/news/trip_reports/middle-east-2009.html (last visited Nov. 1, 2017); *Middle Easter Carter 2*, Associated Press Archive, Story No. 609865 (Jun. 16, 2009), http://www.aparchive.com/ (search "609865" in search box) (last visited Nov. 1, 2017).

As stated in the Carter Center's public reports, the primary purposes of these activities were to facilitate dialog between the Palestinian factions and to urge Hamas to recognize Israel's right to exist, forgo violence, and accept previous peace agreements. *See Trip Report: Middle East*, *supra*; *Israel & Palestine*, *supra*. In addition, the Carter Center routinely advised the United States Government of its efforts to help resolve conflicts between Palestinian factions, including the activities identified by Relator.

Relator acknowledges that the Carter Center has "made no secret of the fact that its representatives regularly met with representatives of designated terrorist organizations," *see* Compl. ¶ 17, and has provided no evidence that the Carter Center concealed its activities from the

- 3 -

United States. Rather, Relator bases its allegations on publicly available information about the Carter Center's meetings with representatives of Hamas and the Popular Front for the Liberation of Palestine. Relator has not identified any grants awarded to the Carter Center that involve the activities that Relator asserts constitute material support to terrorists. Nor has Relator alleged that the Carter Center failed to provide the services called for by the USAID grants it has received. At its essence, Relator's complaint articulates a difference of opinion with the Carter Center about how to resolve conflict in the Middle East. Relator's complaint, however, does not allege facts addressed to the elements it or the United States must prove to establish violations of the FCA.

If the United States were to decline to intervene in this case and allow Relator to proceed with this matter,[1] the United States, as the real party in interest, likely would be required to devote considerable resources to the litigation. For example, discovery in this case likely would be extensive. The United States also has a substantial interest in the development of the law under the FCA because it is the United States' primary tool for rooting out fraud on the Government. Thus, given Relator's failure to identify any deception by the Carter Center supporting an FCA violation, and the burdens that would be imposed on the Government should this case proceed with litigation, the United States moves to dismiss this case.

## ARGUMENT

The FCA is the Government's primary tool for recovering money lost from the United States Treasury due to fraud. *See generally* 31 U.S.C § 3729. Its *qui tam* provisions permit a private person, "a relator," to file an action on behalf of the United States to recover the United States' damages in exchange for a payment of up to 30% of any eventual recovery. *See* 31 U.S.C.

---

[1] Relator has indicated that it would proceed with this matter if the United States were to decline intervention.

§ 3730(b)-(d). The United States may elect to intervene in the action and assume primary responsibility for the litigation, or it may decline to intervene, which allows the relator to pursue the action on the United States' behalf. *See* 31 U.S.C. §§ 3730(b)(2), (c). The United States also retains the authority to dismiss an action when dismissal is in the interests of the United States. *See* 31 U.S.C. § 3730(c)(2)(A) ("The Government may dismiss the action notwithstanding the objections of the person initiating the action if the person has been notified by the Government of the filing of the motion and the court has provided the person with an opportunity for a hearing on the motion.").

The D.C. Circuit has recognized that 31 U.S.C. § 3730(c)(2)(A) gives the United States "virtually 'unfettered' discretion" to dismiss a *qui tam* suit, including, as here, before the United States has made its election whether to intervene. *See United States ex rel. Hoyte v. Am. Nat'l Red Cross*, 518 F.3d 61, 65 (D.C. Cir. 2008); *Swift v. United States*, 318 F.3d 250, 251-54 (D.C. Cir. 2003). By affording *qui tam* relators an opportunity for a hearing if they request one, Section 3730(c)(2)(A) gives relators a chance to convince the United States to change its mind but gives the Court no role in second-guessing the United States' exercise of its prosecutorial discretion to dismiss an action. *See Hoyte*, 518 F.3d at 65; *Swift*, 318 F.3d at 253 ("the function of a hearing when the relator requests one is simply to give the relator a formal opportunity to convince the government not to end the case"). The D.C. Circuit has explained: "Nothing in § 3730(c)(2)(A) purports to deprive the Executive Branch of its historical prerogative to decide which cases should go forward in the name of the United States." *Swift*, 318 F. 3d at 253.

In the exercise of its discretion, the United States has determined that this action should not proceed. Among other reasons guiding the sound exercise of its unreviewable discretion, the

United States believes that Relator's claims are without legal basis and litigation of them would require further unnecessary expenditures of scarce Government resources.

## CONCLUSION

For the foregoing reasons, the United States respectfully requests that the Relator be afforded an opportunity for a hearing and that this action be dismissed thereafter.

Dated: November 2, 2017
      Washington, DC

Respectfully submitted,

CHAD A. READLER
Acting Assistant Attorney General

JESSIE K. LIU, D.C. Bar #472845
United States Attorney

DANIEL F. VAN HORN, D.C. Bar #924092
Chief, Civil Division, U.S. Attorney's Office

By: /s/
BRIAN P. HUDAK
Assistant United States Attorney
555 Fourth Street, NW
Washington, DC 20530
(202) 252-2549

MICHAEL D. GRANSTON
MICHAL TINGLE, D.C. Bar #421587
ROBERT MCAULIFFE, D.C. Bar #419869
Attorneys, Commercial Litigation Branch
P.O. Box 261, Ben Franklin Station
Washington, DC 20044
(202) 514-6832

*Attorneys for the United States of America*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 2nd day of November, 2017, I caused a true and correct copy of the foregoing to be served on Relator, through counsel, by first-class mail to:

David Abrams
P.O. Box 3353 Church Street Station
New York, NY 10008

Because this action is under seal pursuant to 31 U.S.C. § 3729, *et seq.*, defendant has not been served with copies of the foregoing.

BRIAN P. HUDAK
Assistant United States Attorney
555 Fourth Street, NW
Washington, DC 20530
(202) 252-2549
brian.hudak@usdoj.gov